UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

SHARON E. AGER,

                                          Plaintiff,

-vs-                                                                       DECISION AND ORDER

NANCY A. BERRYHILL, *Deputy Commissioner of Operations Performing the Duties and Functions Not Reserved to the Commissioner of Social Security*,      17-CV-6595-CJS

                                          Defendant.

---

## APPEARANCES

| | |
|---|---|
| For Plaintiff: | Ida M. Comerford, Esq.<br>Kenneth R. Hiller, Esq.<br>Law Offices of Kenneth Hiller, PPLC<br>6000 North Bailey Avenue, Suite 1A<br>Amherst, NY 14226<br>(877) 236-7366 |
| For Defendant: | Kathryn L. Smith, Esq.<br>U.S. Attorney's Office<br>100 State Street, Fifth Floor<br>Rochester, NY 14614<br>(585) 263-6760<br><br>Padma Ghatage, Esq.<br>Social Security Administration<br>Office of General Counsel<br>26 Federal Plaza, Room 3904<br>New York, NY 10278<br>(212) 264-0981 |

## INTRODUCTION

Plaintiff brings this action pursuant to the Social Security Act ("the Act") seeking review of the final decision of the Commissioner of Social Security ("the Commissioner") that denied her application for disability insurance benefits ("DIB) Title II of the Act. Complaint, Aug. 28, 2017, ECF No. 1. The Court has jurisdiction over this action under 42 U.S.C. §§ 405(g).

Both parties have moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 7 & 10. For the reasons that follow, the Commissioner's motion is granted and Plaintiff's motion is denied.

## BACKGROUND

On September 18, 2014, Plaintiff protectively applied for DIB with the Social Security Administration ("the SSA"). R.[1] 11. She alleged disability since January 16, 2014, due to history of pseudoseizures, degenerative joint disease of the knees, degenerative disc disease of the lumbar, complicated grief, and major depressive disorder. R. 14. On July 14, 2016, Plaintiff, her daughter, and a vocational expert ("VE") testified at a hearing before Administrative Law Judge Michael Carr ("the ALJ"). R. 59. On November 2, 2016, the ALJ issued a decision finding that Plaintiff was not disabled within the meaning of the Act. R. 21. On June 30, 2017, the Appeals Council denied Plaintiff's request for review. R. 1. Thereafter, Plaintiff commenced this action seeking review of the Commissioner's final decision. ECF No. 1.

## LEGAL STANDARD

### I. District Court Review

"In reviewing a final decision of the SSA, this Court is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (internal citation omitted); *see also* 42 U.S.C. § 405(g). The Act holds that a decision by the Commissioner is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (quotation marks omitted). It is not the Court's function to "determine *de*

---

[1] References to "R." are to the administrative record in this matter.

- 2 -

*novo* whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998) (quotation marks omitted); *see also Wagner v. Sec'y of Health & Human Servs.*, 906 F.2d 856, 860 (2d Cir. 1990) (holding that review of the Secretary's decision is not *de novo* and that the Secretary's findings are conclusive if supported by substantial evidence).

## *II. Disability Determination*

An ALJ must follow a five-step sequential evaluation to determine whether a claimant is disabled within the meaning of the Act. *See Parker v. City of New York*, 476 U.S. 467, 470-71 (1986). At step one, the ALJ must determine whether the claimant is engaged in substantial gainful work activity. *See* 20 C.F.R. § 404.1520(b). If so, the claimant is not disabled. If not, the ALJ proceeds to step two and determines whether the claimant has an impairment, or combination of impairments, that is "severe" within the meaning of the Act, meaning that it imposes significant restrictions on the claimant's ability to perform basic work activities. 20 C.F.R. § 404.1520(c). If the claimant does not have a severe impairment or combination of impairments, the analysis concludes with a finding of "not disabled." If the claimant does, the ALJ continues to step three.

At step three, the ALJ examines whether a claimant's impairment meets or medically equals the criteria of a listed impairment in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"). 20 C.F.R. § 404.1520(d). If the impairment meets or medically equals the criteria of a Listing and meets the durational requirement (20 C.F.R. § 404.1509), the claimant is disabled. If not, the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or mental work activities on a sustained basis, notwithstanding limitations for the collective impairments. *See* 20 C.F.R. § 404.1520(e)-(f).

The ALJ then proceeds to step four and determines whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work. 20 C.F.R. §

404.1520(f). If the claimant can perform such requirements, then he or she is not disabled. If he or she cannot, the analysis proceeds to the fifth and final step, wherein the burden shifts to the Commissioner to show that the claimant is not disabled. To do so, the Commissioner must present evidence to demonstrate that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his or her age, education, and work experience. *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir. 1999) (internal quotation omitted); *see also* 20 C.F.R. § 404.1560(c).

DISCUSSION

### *I.    The ALJ Properly Analyzed Ms. Paradise's Assessments*

Plaintiff contends that the ALJ failed to follow the requirement of Social Security Ruling 06-03p in assessing the non-medical source information from licensed social worker Christy Paradise ("Ms. Paradise"). In particular, Plaintiff complains that the ALJ did not provide a good reason for rejecting her Medical Opinion Statement (Mental). R. 535–39. Further, Plaintiff states that the Commissioner's brief is merely a post-hoc rationalization of the ALJ's decision and is contrary to this Court's holding in *Thomas v. Colvin*, No. 15-CV-6629 (MAT), 2016 WL 6993384 (W.D.N.Y. Nov. 30, 2016).

Ms. Paradise partially filled in a portion of the Medical Opinion Statement (Mental) form report asking her to,

> rate your patient's mental abilities to function independently, appropriately, effectively and on a sustained, consistent, useful and routine basis, without direct supervision or undue interruptions or distractions – 8 hours per day, 5 days per week – in a regular, competitive work setting for more than six consecutive months. Note: limitations do not include a one-hour lunch break or two 15 minute breaks, one in the morning and afternoon; or limitations due to substance or alcohol abuse.

R. 537. The form listed five categories, with the first being "does not preclude performance of

- 4 -

any aspect of the job," and the fifth being "precludes all performance in a regular work setting." *Id*. Under the form report's category of "Mental Abilities and Aptitudes Needed to Do Unskilled Work," is a subcategory "Understanding and Memory," which included three sub-sub categories: "Remember work-like procedures"; "Understand and remember very short and simple directions"; and "Understand and remember detailed instructions." R. 537. For each of those categories, and Ms. Paradise drew a line through the fifth category column. *Id*. She did the same for the next sub category, "Sustained Concentration and Memory," and all nine of its sub-sub categories. She summarized her response on the form by hand writing, "Sharon is unable to maintain all ADLs."[2] R. 537. The form continued on the following page, but Ms. Paradise did not mark anything in the sub categories of "Social Interaction," or "Adaptation." R. 538. With regard to Ms. Paradise's progress notes in the Record, the ALJ wrote the following:

> In November 2016, Christy Paradise, LCSW-R, noted that with consistent treatment, the claimant will overcome her depression and successfully work through her complicated emotions. She also noted that the claimant has a great deal of physical pain that reinforces her depressive symptoms. Ms. Paradise also noted that the claimant's symptoms and resulting functioning limitations would not increase if she was working in a full-time position. She opined that the claimant is unable to work. The undersigned gives little weight to Ms. Paradise's opinions. The Social Security Administration does not classify her as an acceptable medical source, and in accordance with SSR 06-03p, the undersigned is limited to using her opinions as insight into the severity of the claimant's impairments and how they affect her ability to function. With that said, Ms. Paradise did not provide a function-by-function analysis of the claimant's capabilities in the workplace. Based on all of the aforementioned issues, Ms. Paradise's opinions receive little weight (See Exhibits I2F/2, 6 and 11F/2).

R. 19. The ALJ's referred to Exhibit 11F/2, which contains this language from Ms. Paradise: "Sharon is on disability from her job as a radiologist. She is currently unable to work." R. 444.

---

[2] The Court assumes that in writing "ADLs" Ms. Paradise was referring to activities of daily living. *See L.O. v. N.Y. City Dep't of Educ.*, 822 F.3d 95 (2d Cir. 2016) ("ADL [*i.e.*, activities of daily living)]").

The ALJ's referred also to Exhibit 12F/2,6, which is Ms. Paradise's June 16, 2016, Medical Opinion Statement (Mental) and contains this pertinent language: "With consistency in treatment, [Plaintiff] will overcome her depression and successfully work through the complicated emotions which accompany the suicide of her daughter." R. 535. The ALJ also relied on Ms. Paradise's "No" response to the question, "would your patient's symptoms and resulting functional limitations increase if your patient was working in a full-time position?" R. 539. His evaluation of the entries Ms. Paradise made on the form concerning "Mental Abilities and Aptitudes Needed to Do Unskilled Work," described above, was: "Ms. Paradise did not provide a function-by-function analysis of the claimant's capabilities in the workplace." R. 19.

The Commissioner, in her memorandum, addresses Ms. Paradise's evidence at great length. She argues that under the regulations, Ms. Paradise was not an acceptable medical source, as defined in SSR 06-3p, and that her opinions were not medical opinions, which can only come from a physician, psychologist, or other acceptable medical source. 20 C.F.R. § 404.1527(a)(2). SSR 06-3p requires the ALJ to consider, *inter alia*, how consistent Ms. Paradise's opinion is with the other evidence. The Commissioner argues that the ALJ properly treated Ms. Paradise's incomplete notations on the grids in the Medical Opinion Statement (Mental) as "a general statement that Plaintiff was unable to perform the mental demands of unskilled work, rather than an attempt to specifically address the components thereof, and properly used it as a factor to give less weight to Ms. Paradise's statement (Tr.[3] 19)." Comm'r Mem. of Law 21–22, May 24, 2018, ECF No. 10-1.

---

[3] The Commissioner uses the abbreviation "Tr." to refer to pages in the administrative record. The Court notes that the administrative record does contain transcripts, and thus, has elected to use the abbreviation "R." to refer to pages in the administrative record.

As the ALJ pointed out in his decision, two acceptable medical sources who either examined Plaintiff, or reviewed her records, both concluded that she was mentally capable of performing unskilled work. State agency consultant T. Harding, Ph.D., "opined that the claimant is able to understand and follow simple instructions; attend and concentrate on repetitive unskilled work tasks, adequately interact with peers and supervisors (although not necessarily the general public); and adapt to routine workplace changes." R. 18. Kristina Luna, Psy.D., performed a consultative exam and,

> opined that the claimant has no limitations in her ability to understand and follow simple directions and instructions, perform simple tasks independently, maintain attention and concentration, or learn new tasks. Dr. Luna further determined that the claimant is mildly limited in her ability to perform complex tasks independently, is moderately limited in her ability to maintain a regular schedule, make decisions, relate adequately with others, has marked limitations in appropriately dealing with stress, has distractibility difficulties, but can manage her own funds. She diagnosed the claimant with complicated grief and major depressive disorder.

R. 18. The ALJ also noted, "there are doctor's notes detailing that medication stabilized the claimant's depressive disorder (See Exhibits 3F/4 and 8F/2–8)." R. 17. In Exhibit 3F, dated September 29, 2014, Sunitha Bollineni, M.D., Plaintiff's treating physician, wrote that Plaintiff's anxiety state was stable on Wellbutrin, Lexapro, and Ativan, and noted the same with regard to Plaintiff's depressive disorder. R. 287. In Exhibit 8F, which consists of Penfield Psychiatry progress notes from July 17, 2014, to June 18, 2015, Lauren O'Meal, NP, consistently noted that Plaintiff's thought content was normal, that her memory for immediate recall was intact, and she exercised good judgment without hallucinations. Regarding a November 7, 2014, visit, Ms. O'Meal noted that Plaintiff "[f]eels the medications changes have been helpful. She is feeling overall improved and more hopeful. She is going down south with her family for 3 mos this winter and looking forward to this." R. 387. As to a May 1, 2015, visit, Ms. O'Meal noted the following: "She talked today about not being able to go back to work and

her pending SSD case. She continues to process and grieve her daughter's death and is seeing her counselor regularly. She has been feeling down and sad." R. 388. Nevertheless, Ms. O'Meal's objective examination results were benign:

> Mental Status Examination Appearance: well appearing Behavior: eye contact good Speech: slowed Thought Processes: linear Thought Content: normal Mood: sad Affect: constricted Orientation: person place time Memory: immediate recall intact insight: good Judgement: good Hallucinations: no Attention/Concentration: alert Suicidal Ideation: no Homicidal or Violent Thoughts: no Language difficulties: no

R. 388. With respect to a May 15, 2015, visit, Ms. O'Meal noted that Plaintiff, "has been feeling down and crying a lot. She has low energy and isn't motivated to do things." R. 389. In her visit with Plaintiff on June 18, 2015, as detailed in the Record, Ms. O'Meal wrote that Plaintiff "enjoyed herself at her son's wedding last weekend," and Ms. O'Meal again made benign objective observations. R. 390. Nothing in Ms. O'Meal's progress notes addresses whether Plaintiff could perform unskilled work on a full-time basis. However, neither Ms. O'Meal's observations or notes support Ms. Paradise's assessment that Plaintiff was incapable of any activities of daily living, as Ms. Paradise wrote.

Furthermore, Ms. Paradise's assessment contradicts Dr. Harding's October 30, 2014, mental residual functional capacity assessment. Dr. Harding wrote: "Clt is able to understand and follow simple instructions; attend and concentrate on repetitive unskilled work tasks, adequately interact with peers and supervisors (although not necessarily the general public); and adapt to routine workplace changes. Greater potential may be present with continued participation in treatment." R. 120.

Despite the regularity of Ms. Paradise's treatment, the ALJ was "free to discount [her] assessments accordingly in favor of the objective findings of other medical doctors." *Genier v. Astrue*, 298 F. App'x 105, 108–09 (2d Cir. 2008). With regard to the holding in *Thomas*,

cited above, in which the Honorable Michael A. Telesca of this Court wrote in pertinent part as follows: "Here, because the ALJ and the medical expert whose opinion is being evaluated are evidently assigning very different meanings to key terms, the Court is unable to determine how the ALJ reconciled this discrepancy." *Thomas*, 2016 WL 6993384, at *3. In this case, Plaintiff argues that the ALJ failed to discuss the notes of Ms. Paradise or Ms. O'Meal. However, as the Court pointed out above, the ALJ did discuss both sources' notes and based on his analysis of the Record, properly discounted Ms. Paradise's opinion that Plaintiff was mentally incapable of unskilled work, relying in part on Ms. O'Meal's observations and conclusions. The Court finds not ambiguity of terms between the notes and the ALJ's decision. Ms. Paradise's opinions were inconsistent with the medical opinions in the record and were not adequately supported by objective observations.

## *II. The ALJ's Assessment of Lisa Seeley's Testimony*

Plaintiff contends that the ALJ improperly gave little weight to the testimony Lisa Seeley ("Ms. Seeley"), Plaintiff's daughter. She claims that the ALJ held Ms. Seeley to a heightened standard. In his decision, the ALJ wrote:

> The claimant's daughter, who has a high school education and who was not presented as either an acceptable or non-acceptable medical source for Social Security purposes, testified that her mother's impairments prevent her from working. However, despite the claimant's allegations that she struggles to focus, her daughter testified that she spends a lot of time doing internet research. While the undersigned is appreciative of Ms. Seeley's testimony, opinions on her mother's residual functional capacity are outside of her level of expertise. The Social Security Administration does not classify Ms. Seeley as an acceptable medical source, and in accordance with SSR 06-03p, the undersigned is limited to using her opinions as insight into the severity of the claimant's impairments and how they affect her ability to function. Moreover, as the daughter of the claimant, Ms. Seeley is not an impartial witness. Thus, her opinions receive little weight.

R. 19.

Social Security Ruling 06-3p states that in assessing evidence from a non-medical source, "it would be appropriate to consider such factors as the nature and extent of the relationship, whether the evidence is consistent with other evidence, and any other factors that tend to support or refute the evidence." 2006 SSR LEXIS 5, *15. Ms. Seeley testified that after her sister died, Plaintiff had difficulty focusing and concentrating and is very emotional. R. 83. She gave an example of when she and Plaintiff were talking about taking a trip to the mountains and in the middle of the conversation, Plaintiff looked at her daughter "like what are we talking about?" R. 83. Ms. Seely helps Plaintiff remember to take her medications, and testified that Plaintiff sometimes bursts into tears while shopping and her daughter will take her out to her car to console her. R. 84. Ms. Seeley also testified that Plaintiff does not cook, but "does a lot of reading online—you know, Internet research on PTSD, you know, things like that." R. 85. She further stated that she knows her mother "wants to work, but at this point, she's just unable to...." *Id*. During examination by Plaintiff's counsel, Ms. Seeley testified that she worked as "a vocational counselor for an employment network, affiliated with the Social Security Administration." R. 86. She testified that she has a high school decree and personal training through the Ticket to Work program.[4] R. 89. She gave her opinion that Plaintiff would not have the cognitive skills to be able to do any of the job duties necessary to hold a position. Ms. Seeley stated that she came to that conclusion because she needed to take care of Plaintiff's medications and setting of appointments and similar duties. R. 87.

Ms. Seeley is obviously not an acceptable medical source, as the ALJ noted in his decision. R. 19. Nothing in that decision suggests to the Court that the Commissioner held Ms. Seeley to the standard of a medical or vocational expert, despite her testimony concerning

---

[4] "The Ticket to Work program is a program created by Social Security Administration to help people who are on disability return to work." R. 89.

her work. To the contrary, the ALJ stated that she was not qualified to give an opinion on Plaintiff's residual functional capacity. R. 19. The Commissioner argues that the ALJ properly determined that Ms. Seeley's testimony that her mother was unable to concentrate or focus was contracted by her testimony that Plaintiff also conducted Internet research and reading. Comm'r Mem. of Law 25. The Court agrees, and further finds the Commissioner's argument, that Ms. Seeley's testimony was cumulative to Plaintiff's, accurate as well. "Generally speaking, it is the function of the ALJ, not the reviewing court, 'to resolve evidentiary conflicts and to appraise the credibility of witnesses, including the claimant.' *Caroll v. Sec'y of Health & Human Servs.,* 705 F.2d 638, 642 (2d Cir. 1983). In making a credibility determination, the ALJ must consider all of the evidence before him, including the claimant's testimony itself. *See* Social Security Ruling 96-7p, 1996 SSR LEXIS 4." *Salmini v. Comm'r of Soc. Sec.*, 371 F. App'x 109, 113 (2d Cir. 2010). In making his credibility determination, the ALJ did rely on all the evidence before him as well as Plaintiff's and Ms. Seeley's testimony. R. 16, 19. The ALJ determined that the symptoms she and her mother both testified about were not as debilitating as they described. As previously discussed, the medical evidence does not support the extent of Plaintiff's claimed mental limitations.

## CONCLUSION

For the foregoing reasons, Plaintiff's motion for judgment on the pleadings, ECF No. 7, is denied, and the Commissioner's application, also for judgment on the pleadings, ECF No. 10, is granted. The Clerk will enter judgment for the Commissioner of Social Security and close this case.

DATED: July 17, 2018
      Rochester, New York

                                    /s/ Charles J. Siragusa
                                    CHARLES J. SIRAGUSA
                                    United States District Judge